UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAWN T.,[1]

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

21-CV-00092-LJV
DECISION & ORDER

On January 20, 2021, the plaintiff, Dawn T. ("Dawn"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On December 17, 2021, Dawn moved for judgment on the pleadings, Docket Item 8; on May 16, 2022, the Commissioner responded and cross-moved for

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Dawn applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

judgment on the pleadings, Docket Item 9; and on June 27, 2022, Dawn replied, Docket Item 10.

For the reasons that follow, this Court denies Dawn's motion and grants the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.  ALLEGATIONS

Dawn argues that the ALJ erred by improperly applying the treating physician rule to the opinion of Kevin Cleary, M.D.  *See* Docket Item 8-1 at 16-26.  More specifically, she argues that the ALJ "fail[ed] to follow the Appeals Council remand order and properly evaluate and provide good reasons for giving less than controlling weight" to Dr. Cleary's opinion.  *Id.* at 1.  This Court disagrees and therefore affirms the Commissioner's finding of non-disability.

### II.  ANALYSIS

#### A. Dr. Cleary's Opinion

For claims filed before March 27, 2017, such as Dawn's, the ALJ must evaluate every medical opinion received when determining a claimant's residual functional capacity ("RFC").[4]  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources—those who have an "ongoing treatment relationship" with the claimant—because those medical

---

[4] A claimant's RFC "is the most [she] can still do despite [her] limitations . . . in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 193 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.'"  *Id.*

professionals are in the best position to provide a "detailed, longitudinal picture of [the claimant's] medical impairment[s]." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."). In fact, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (second brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)).

If an ALJ decides that a treating physician's opinion is not entitled to controlling weight, then "[he] must *explicitly* apply the factors listed in [sections 404.1527 and 416.927]; the failure to do so is procedural error." *Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022) (emphasis in original). These factors, sometimes referred to as the "*Burgess* factors," include: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* (alterations and internal quotation marks omitted) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019)); *see Burgess*, 537 F.3d at 129.

On November 20, 2016, Dr. Cleary completed a medical source statement evaluating Dawn's physical limitations. Docket Item 7 at 695. Dr. Cleary opined that Dawn could sit for less than 2 hours and stand for less than 2 hours in an 8-hour workday. *Id.* He also opined that Dawn could frequently lift up to 5 pounds,

4

occasionally lift 6-10 pounds, and never lift more than 10 pounds. *Id.* Finally, Dr. Cleary opined that Dawn could occasionally bend and reach but could never squat, crawl, or climb. *Id.*

The ALJ explicitly applied the *Burgess* factors, and therefore followed the treating physician rule, in evaluating Dr. Cleary's opinion. For example, he noted that Dr. Cleary was Dawn's "treating and examining primary care physician . . . with a longitudinal treatment history . . . for her alleged impairments," thus explicitly addressing the first and fourth factors. *See id*. at 712. Likewise, he addressed Dr. Cleary's own treatment notes as well as the findings of other medical providers and found Dr. Cleary's opinions to be largely unsupported by, and inconsistent with, either. *See id*. ("Dr. Cleary's opinion regarding [Dawn's] physical limitations . . . is not supported by his objective findings nor those of any other medical source . . . ."). So the ALJ explicitly applied the *Burgess* factors as he was required to do.

Moreover, the ALJ explained his conclusions in a way that allows the Court to evaluate them. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and . . . do[es] not comprehensively set forth reasons for the weight assigned . . . ."). For example, he gave Dr. Cleary's opinion "little, and not controlling[,] weight . . . because [Dawn's] subjective complaints" were worse than "the objective medical evidence" suggested and because Dr. Cleary's opinion was largely "based on [Dawn's] subjective allegations." Docket Item 7 at 712. Citing the record, the ALJ observed that "Dr. Cleary's treatment notes consistently show[ed] mild findings and improvement with treatment." *Id.* (citing Docket Item 7 at

5

424, 428, 502, 511, 670). And the ALJ noted that "[Dawn's] recent treatment records showed conservative care" and reported that "she d[id] well with home stretching, daily walks with her dog, use of Ibuprofen[,] and coping strategies with excellent success in pain control." *Id.* (citing Docket Item 7 at 1236, 1240, 1245). Those reasons were sufficient to satisfy this Court that the substance of the treating physician rule was not traversed. *See, e.g.*, *Estrella*, 925 F.3d at 96.

Dawn also argues that the ALJ erred by not giving Dr. Cleary's opinion, or any other opinion in the record, great or controlling weight. *See* Docket Item 8-1 at 19. This Court disagrees. An ALJ bears "the final responsibility" for making an RFC determination, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), and does not necessarily need a medical opinion to do so, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (upholding an ALJ's RFC determination based solely on a claimant's treatment notes when there was no medical opinion evaluating the claimant's physical limitations). *See also Schillo*, 31 F.4th at 78 ("[W]e also reject Schillo's argument that, having declined to afford controlling weight to any of the three physicians' opinions, the ALJ was thereby prohibited from making an RFC finding whatsoever."). The ALJ considered Dawn's own testimony, the objective medical evidence, and the opinions of multiple medical professionals in formulating Dawn's RFC. *See* Docket Item 7 at 705-13. The ALJ therefore did not err by not affording the opinion of Dr. Cleary, or any other provider, great or controlling weight.

Dawn says that the ALJ's reasons for discounting Dr. Cleary's opinion were not "good" ones. *See* Docket Item 8-1 at 19-24. But finding that an opinion is inconsistent with a provider's own treatment notes and is largely based on unsupported subjective

6

complaints are "good reasons" to discount it.  *Cf. Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (upholding ALJ's discounting of treating physician's opinion for being "internally inconsistent with his previous treatment notes" and apparently "based on the subjective statements of the claimant").

Dawn cites evidence that she "had limited range of motion, paraspinal tenderness down her entire spine, limited extension of her lumber spine, [and] positive straight leg raise testing and . . . [that she] complained of worsening pain."  *Id.* at 20 (citing Docket Item 7 at 423-24, 427-30, 501-02, 511, 690).  But that amounts to little more than disagreeing with how the ALJ weighed the evidence, and it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Dawn] is disabled."  *Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review.").  So that argument fails as well.

In sum, the ALJ correctly applied the treating physician rule in deciding to give Dr. Cleary's opinion little weight.  Moreover, he formulated an RFC based on the limitations in the opinions of Dr. Cleary and other providers that he credited.[5]  For those reasons, the ALJ did not err in evaluating the opinion evidence.

---

[5] The ALJ found that Dawn had the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Dawn] can occasionally climb ramps and stairs, ladders, ropes[,] or scaffolds.  [Dawn] can occasionally balance, stoop, kneel, crouch[,] and crawl.  [Dawn] can perform simple, routine[,] and repetitive tasks and make simple, work-related decisions.  [Dawn] requires a sit-stand option, changing positions every 30 minutes.  [Dawn] can have

**B. The ALJ's Sit/Stand Limitation**

Although not raised as a separate point, Dawn also argues that the ALJ erred by including a 30-minute sit/stand limitation in the RFC that was not "tethered to any particular medical evidence." *See* Docket Item 8-1 at 23-26.  Again, this Court disagrees.

An ALJ must "weigh all of the evidence to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo*, 31 F.4th at 78.  But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision."  *Matta*, 508 F. App'x at 56.  As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Moreover, a limitation with a percentage range or other descriptor that does not perfectly match a medical opinion is not automatically unsupported by substantial evidence.  *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range (0-10%) to illustrate [the claimant's]

---

occasional exposure to humidity and wetness (SSR 85-15 and 96-9p).  [Dawn] can have occasional exposure to dusts, odors, fumes, and other pulmonary irritants (SSR 85-15 and 96-9p).

Docket Item 7 at 705.

8

limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence."). The question is whether there was evidence in the record that supported the ALJ's finding of a 30-minute sit/stand limitation. *See id.* ("For that reason, the cases cited by Johnson, wherein this Court rejected highly specific findings that were unsupported by the record, are inapt."). And there was.

Indeed, Dawn herself testified at the administrative hearing that she typically could sit for 20-30 minutes, and sometimes for up to an entire hour, before needing to stand up and stretch, and that she could stand for 15 minutes at a time. *See* Docket Item 7 at 770. So the limitation was largely consistent with Dawn's own testimony. What is more, the sit/stand limitation also was consistent with the opinion of independent medical examiner Walter Hoffman, M.D., who opined that Dawn needed a job that would allow her to change between sitting and standing frequently. *Id.* at 649; *see Matta*, 508 F. App'x at 56. As such, the ALJ's 30-minute sit/stand limitation was supported by substantial evidence.

**CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Dawn's motion for judgment on the pleadings, Docket Item 8, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 9, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: May 15, 2023
           Buffalo, New York

                                                  /s/ Lawrence J. Vilardo
                                               LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE